JESSICA T. KILLIAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Killian v. Commissioner
Docket Nos. 39650-87, 20487-88
United States Tax Court
T.C. Memo 1990-286; 1990 Tax Ct. Memo LEXIS 304; 59 T.C.M. (CCH) 824; T.C.M. (RIA) 90286; June 11, 1990, Filed *304 Decisions will be entered under Rule 155. Kenneth E. Mitchell, for the petitioner. Robert J. Misey, Jr., for the respondent. SCOTT, Judge. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's income tax and additions to tax as follows: Additions to tax, sections [1]
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6654
6661
1986
$ 28,659.12
$ 7,164.78
$ 1,432.96
To be determined
$ 1,387
$ 7,164.78
on entire amount
of deficiency.
1987
31,967.00
3,197.00
1,598.00
To be determined
1,943
on entire amount
of deficiency.
The issues for decision are: 1) whether petitioner had unreported income for the years 1986 and 1987 in the respective amounts of $ 73,469 and $ 89,617 or if not in these amounts, what was the amount of petitioner's *306 unreported income, and 2) whether petitioner is liable for additions to tax under sections 6651(a)(1), 6653(a)(1)(A), 6653(a)(1)(B), and 6654 for each of the years here in issue and under section 6661 for the year 1986. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner is Vietnamese by birth. In 1972 she came to this country with her then husband, Mr. Killian, and became an American citizen. At the time of the filing of her petitions in these cases, petitioner resided in San Jose, California. Petitioner did not file Federal income tax returns for either the taxable year 1986 or the taxable year 1987. Prior to 1986 petitioner had filed joint Federal income tax returns with her former husband showing taxable income for the years 1983, 1984, and 1985 of $ 12,647, $ 7,674, and $ 7,428, respectively. Petitioner is entitled to income averaging for 1986 in calculating any deficiency, and, for this purpose, petitioner's filing status is married, filing separate. She was separated from her husband Steven Killian in 1986 and was divorced from him in 1987. For purposes of income averaging, petitioner's income for the base period years is *307 one-half of the amounts reported on the joint return. On August 7, 1987, a vice unit of the San Jose Police Department served a search warrant at 6181 Leigh Avenue, San Jose, California, and seized $ 3,566 in cash from various locations on the premises. Members of the vice unit of the San Jose Police Department had the residence at 6181 Leigh Avenue under surveillance prior to August 7, 1987, and observed activities that they considered evidence of prostitution occurring on the premises. On August 7, 1987, petitioner and Hai Chen H'sieh (hereinafter Chen) were arrested by the San Jose Police Department in connection with a search of the premises at 6181 Leigh Avenue, San Jose, California. Following this arrest they were released because charges were not brought within the statutory period required under California law. On August 21, 1987, the San Jose Police Department arrested petitioner and Chen at an apartment on Richmond Avenue in San Jose, California, on arrest warrants issued after charges were filed by the Santa Clara County District Attorney's office relating to the search of 6181 Leigh Avenue, San Jose, California, on August 7, 1987. At the time of the arrest of petitioner *308 and Chen on August 21, 1987, the San Jose Police Department found that petitioner was carrying a plastic bag containing cash in the amount of $ 8,550 and also was carrying a plastic bag containing $ 5,400 in money orders, consisting of two uncashed United States Postal Service money orders in the amount of $ 700 each and four blank bank money orders dated in 1987 in the amount of $ 1,000 each. The San Jose Police Department also found that petitioner was carrying a plastic bag containing 90 United States Postal Service money order receipts totaling $ 62,300 dated in 1987, $ 41,300 of the money order receipts having petitioner's name on the "pay to" line and $ 21,000 of the money order receipts being completely blank. On August 21, 1987, during the course of the arrest, the San Jose Police Department also found that petitioner was carrying a plastic bag containing 51 United States Postal Service money order receipts totaling $ 35,400 dated during the year 1986. All of these receipts are made out to petitioner, $ 15,300 of the receipts being from Chen to petitioner and $ 20,100 of the receipts being from petitioner to petitioner. During the taxable year 1987, $ 9,601 was deposited *309 to petitioner's Bank of America account number 0826-04415-0 and $ 488 in cash was withdrawn from that account. During the taxable year 1986, $ 38,049 was deposited to petitioner's Bank of America account number 0826-04415-0 and $ 22,300 in cash was withdrawn from that account. On September 7, 1988, following a preliminary hearing on the criminal charges filed against petitioner, she pled guilty to an attempted pimping and pandering charge under California Penal Code sections 664 and 266h (West 1988). On December 2, 1988, she was sentenced by the Superior Court of Santa Clara County to one year in the county jail. At the time of the trial of this case, she was serving that time in a work furlough center in San Diego, California. On September 7, 1988, petitioner's co-defendant in the criminal action, Chen, pled guilty to pimping, a violation of California Penal Code section 266h, a felony. On December 2, 1989, the Santa Clara County Superior Court sentenced Chen to three years in state prison where, at the time of the trial, he was serving his sentence. Chen was not an American citizen, did not have a social security number, and *310 his judgment and commitment by the Superior Court of California, County of Santa Clara, had a notation "motion for recommendation against deportation denied." Petitioner signed a lease on the house at 6181 Leigh Avenue, San Jose, California, sometime in 1986. Shortly thereafter, Chen came to live there with her. When petitioner and Chen were arrested on August 21, 1987, they had their bags packed and were preparing to depart for Las Vegas. Petitioner enjoyed gambling and had, on a number of occasions, gambled in Las Vegas and Reno. At the time of the arrest on August 21, 1987, Chen had an airline ticket for a flight from San Francisco to Taipei in his pocket which he had procured a day or two before through a travel agency and which was for a flight leaving around midnight on August 21. The ticket was one-way and there was only one ticket. Generally, when petitioner went to the branch of the Bank of America where she maintained her account, Chen was with her. Sometimes they would withdraw money from her account and buy international money orders. At other times, they would buy either domestic or international money orders with cash they had brought to the bank with them. *311 Sometimes the transaction was conducted by petitioner and sometimes by Chen. After petitioner was arrested on August 7, 1987, a policeman with the San Jose Police Department interviewed her. He asked her questions and she replied generally with yes or no answers. The policeman determined that petitioner's English was sufficiently fluent so that a Vietnamese interpreter was not needed. In the report the policeman made of his interview of petitioner on August 7, 1987, he stated that petitioner stated that she was intending to close down "her operation" in the next two weeks, because she was in constant fear of robbery. He further stated that petitioner told him that Chen, a sometimes boyfriend, was not in a partnership with her and that the prostitution operation was entirely her idea and that she would give money to Chen for tea and rice. The report further stated that "Killian was informed that her cooperation and candor would be reflected in this report." On August 25, 1987, respondent issued to petitioner a notice of jeopardy assessment for the taxable year 1986. On that same date, respondent also issued to petitioner a notice of termination assessment for the taxable *312 year January 1, 1987 to August 21, 1987. Immediately prior to August 25, 1987, $ 17,794.88 was turned over to the Internal Revenue Service by the San Jose Police Department pursuant to a notice of levy and the parties agree that for the purpose of this case, August 25, 1987, shall be considered the day of payment of taxes by petitioner. Respondent in his notice of deficiency determined petitioner's income for 1986 by adding to all deposits in her bank account for that year the amount of the money order receipts dated in 1986, which were found in a plastic bag she was carrying when she was arrested on August 21, 1987. For the year 1987, respondent determined petitioner's taxable income by adding to the total deposits in her Bank of America bank account the cash found at 6181 Leigh Avenue on August 7, 1987, and the cash found in a plastic bag petitioner was carrying on August 21, 1987, and the money order receipts which petitioner had in a plastic bag on August 21, 1987, which were dated in 1987. None of the money order receipts found in petitioner's possession on August 21, 1987, were international money orders. Some of the bank money order receipts were issued by a different *313 branch of the Bank of America from the branch where petitioner kept her account and was often seen by a bank teller accompanied by Chen. OPINION The issues in this case are purely factual. Unquestionably any income petitioner received from the operation of a house of prostitution is taxable to her even though the activity generating the income was illegal. James v. United States, 366 U.S. 213, 218 (1961). It is equally clear that since petitioner maintained no books and records from which her income can be computed, and there is substantive evidence that she received income, respondent is justified in using any reasonable method to compute her income and the burden is on her to show error in respondent's determination. Delaney v. Commissioner, 743 F.2d 670 (9th Cir. 1984), affirming a Memorandum Opinion of this Court. Petitioner does not contend that she kept books and records or that respondent is not entitled to reconstruct her income by a reasonable method. One of her contentions is that not all of the deposits in her bank account constituted income since there were some withdrawals from the account to buy the money orders which respondent *314 also included in her income. Petitioner contends that this failure to remove this duplication caused her income to be overstated. Petitioner also contends that in 1986 the beginning deposit in her bank account was a withdrawal from her savings account, and that the money in the savings account had come from the sale of jewelry given to her by her mother, which she had brought to this country when she came here from Vietnam. Petitioner contends that the sale of the jewelry produced $ 18,000 and that prior to making the transfer from her savings account to her checking account in 1986, she had spent some of the funds received from that sale. She did not state when the sale of the jewelry was made. Finally, petitioner contends that not all the cash found in the plastic bags she was carrying on August 21, 1987, and in the house on Leigh Avenue on August 7, 1987, or all of the funds deposited in her checking account or used to buy money orders, belonged to her. She contends that at least 70 percent of the funds belonged to Chen. Petitioner contends that the transactions were all in her name, since Chen was not an American citizen, was illegally in this country on an expired visa, *315 had no green card, and had no social security number. Respondent, relying primarily on the report made by a police officer stating his conclusion from an interview with petitioner that the prostitution operation was petitioner's, contends that all the cash and money orders found at the Leigh Avenue house, and in plastic bags carried by petitioner, and all the deposits to her bank account, were her income. We will first consider petitioner's claim that respondent overstated the entire 1986 and 1987 income from the operation of the house on Leigh Avenue. Although some of the withdrawals from petitioner's bank account may, as she contends, have been used to buy money orders, there is no showing whatsoever, that the money orders the withdrawals might have been used to buy were the money orders which were found in petitioner's possession when she was arrested on August 21, 1987. In fact, there is testimony that petitioner and Chen purchased international money orders with funds withdrawn from her bank account, but none of the money orders found in the bags petitioner was carrying were international money orders. We reject petitioner's contention that not all the funds deposited to *316 her bank account were income. If petitioner sold jewelry she has not shown how much, if any, of the receipts from the sale went into the bank account, or if the jewelry was sold at a gain, resulting in a capital gain, or when the sale took place. We, therefore, sustain respondent's determination of the amount of total income from the operation of the house on Leigh Avenue. The more difficult question is how much of the income from the operation of the house on Leigh Avenue constituted income to petitioner. Most of the evidence points to a joint operation of petitioner and Chen. Respondent's main reliance to overcome this evidence is the police report of an interview with petitioner on August 7, 1987. If the statement respondent relies on had been a statement signed by petitioner or even a direct quotation of a statement by petitioner, we would give greater weight to respondent's contention. However, the report was the summary of a police officer's idea of petitioner's responses with yes or no to certain questions. When this evidence is considered in light of all the evidence indicating that Chen was a part of the operation of the house of prostitution at 6181 Leigh Avenue, *317 we conclude that petitioner has carried her burden of showing that some of the cash generated from the operation was Chen's income. In the first place, Chen was convicted of pimping which is a conviction, in effect, of operating a house of prostitution. Section 266h (West 1988) of the California Penal Code provides that a person who knowingly "lives or derives support or maintenance in whole or in part from the earnings or proceeds" of another person's prostitution or "from money loaned or advanced to or charged against that person by any keeper or manager or inmate of a house or other place where prostitution is practiced or allowed, or who solicits or receives compensation for soliciting for the person, is guilty of pimping, a felony * * *." Chen's conviction is some evidence that he received funds from the operation of the house of prostitution. The teller at petitioner's branch of the Bank of America stated that some of the bank money orders issued in blank were purchased by Chen with cash. Also, Chen had an airline ticket to Taipei on his person when he was arrested on August 21, 1987. All of the evidence points to the conclusion that part of the income derived from running *318 a house of prostitution at 6181 Leigh Avenue belonged to Chen. The difficulty is, there is no credible evidence of the understanding as to the division of the income from the prostitution operation between petitioner and Chen. However, based on the record as a whole, and particularly the fact that Chen was convicted of a more serious crime in connection with operating the house of prostitution than petitioner, we conclude that one-half of the funds received from the prostitution operation was income of petitioner and the other half was income of Chen. Respondent makes much of the fact that petitioner knew the prison in which Chen was incarcerated, but did not call him to testify in the case. Certainly, it is well settled that where a readily available witness knows facts, but is not called to testify, the Court may presume the testimony would be unfavorable to the person who does not call the witness. However, in this case, Chen's interest would be directly contrary to petitioner's and he might be a most reluctant witness. Furthermore, there is difficulty in a taxpayer's arranging to have an inmate of a prison brought in to testify. When these facts are considered in conjunction *319 with the testimony of the bank teller as to Chen's purchases of domestic and international money orders and Chen's conviction of a crime which carries with it receiving money or support for assisting in the operation of a house of prostitution, we conclude that the weight of the evidence is that part of the funds belonged to Chen. Using our best judgment, we have determined that one-half belonged to Chen and one-half to petitioner. Petitioner has stipulated that she filed no returns for 1986 and 1987 and, effectively, admitted that she did have income in each of those years which should have been reported. Therefore, the record is clear that petitioner has shown no error in respondent's determination of the additions to tax for failure to file returns or for negligence in either of the years here in issue, and has failed to show error in respondent's determination of a substantial understatement of income in 1986. We, therefore, sustain respondent's determination of additions to tax in each year under sections 6651(a)(1), 6653(a)(1)(A), and 6653(a)(1)(B), and for the year 1986 under section 6661. There has been no showing that petitioner in either year filed an estimated tax *320 return or paid any estimated tax. We, therefore, sustain respondent's determination of an addition to tax under section 6654 for each of the years here in issue. Decisions will be entered under Rule 155. Footnotes
1. All references are to the Internal Revenue Code of 1954 as applicable to the years here in issue.↩